# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHIRLEY A. VASKO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-197 |
| ) | |
| MARK TWYFORD, et. al. ) | |
| ) | |
| Defendants, ) | |

## OPINION

**CONTI, Chief District Judge.**

Plaintiff Shirley A. Vasko ("Vasko") filed a three-count complaint against Mark Twyford ("Twyford") and Washington County Habitat for Humanity ("Habitat") (collectively, the "Defendants"), her former employer. Vasko alleges that Defendants violated federal and state wiretapping laws and her equal protection rights when Twyford allowed another employee to listen, through the intercom on an office telephone, to the conversation during which she was fired. (ECF No. 1.)

Defendants filed a motion to dismiss the complaint. (ECF No. 5.) Defendants filed a brief in support of the motion, ECF No. 6, and Vasko filed a brief in opposition, ECF No. 11. For the reasons set forth below, Defendants' motion will be granted, with prejudice, with respect to the federal wiretapping and equal protection claims. There being no discernable basis for this court to exercise subject-matter jurisdiction over the remaining state wiretapping claim, the court will decline to exercise supplemental jurisdiction over it and will dismiss that claim without prejudice to Vasko's right to refile it in state court.

I. **Factual Background**

Vasko was the Executive Assistant at Habitat, and Twyford, Habitat's Executive Director, was her supervisor. Vasko avers that on October 24, 2014, Twyford terminated her employment for gross insubordination during an in-person meeting that took place in the Habitat offices. (ECF No. 1 ¶¶ 9-10.) Vasko alleges that Twyford used the intercom function on the office telephone to allow Erick Podurgiel ("Podurgiel"), Habitat's Construction Manager, to listen to the conversation from another room. (ECF No. 1 ¶¶ 13-14.) Vasko alleges that she reasonably expected her conversation with Twyford to be private, and that her expectation was violated by Twyford's conduct. (ECF No. 1 ¶ 18.)

Following her termination, Vasko sought to collect unemployment compensation. The Unemployment Compensation Board held a hearing on January 15, 2015, at which time Vasko learned for the first time that Twyford allowed Podurgiel to listen to their conversation.[1] (ECF No. 1 ¶ 13.) Vasko avers that Twyford acted in Habitat's interest in doing so, and that Habitat approved of Twyford's conduct by failing to discipline or terminate Twyford for his conduct. (ECF No. 1 ¶¶ 19, 21-22.)

Vasko's complaint consists of three counts: Count I asserts a violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2511-22 (the "Wiretap Act"); Count II asserts a violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 PA. CONS. STAT. § 5703-28; and Count III asserts a claim under 42 U.S.C. § 1983 for a violation of Vasko's Equal Protection rights. (ECF No. 1 ¶¶ 15-42.) Defendants seek dismissal

---

[1] Vasko alleges that the Unemployment Compensation Board told Vasko at the January 15, 2015 hearing that she "should or may" file charges against Twyford for his conduct. (ECF No. 1 ¶ 12.) Although Vasko attaches the transcript of the hearing to support this allegation, the transcript appears only to be a partial transcript of the hearing and that portion does not reflect that the Unemployment Compensation Board so advised Vasko.

of all counts on the ground that Vasko's complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure Rule 12(b)(6). (ECF No. 5.)

## II. Legal Standards

### A. Motion to Dismiss Standard

The Court of Appeals for the Third Circuit recently reiterated the standards and procedures that a district court must apply when deciding a motion to dismiss made pursuant to Rule 12(b)(6):

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n. 27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," Twombly, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." Id. (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.
>
> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679; see also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Connelly v. Lane Const. Corp., 809 F.3d 780, 786-87 (3d Cir. 2016).

3

At the final step of the analysis, the court is to assume all well-pled allegations of "historical fact" to be true, construe those allegations in the light most favorable to the plaintiff, draw all reasonable inferences from the facts in favor of plaintiff, and ask whether those facts "raise a reasonable expectation that discovery will reveal evidence" to support the legal claim being asserted. Id. at 789. Allegations of historical fact are assumed to be true even if "unrealistic or nonsensical," "chimerical," or "extravagantly fanciful." Id. at 789-90 (citing Iqbal, 556 U.S. at 681). "Put another way, Twombly and Iqbal expressly declined to exclude even outlandish allegations from a presumption of truth except to the extent they resembled a 'formulaic recitation of the elements of a ... claim' or other legal conclusion." Id. at 789.

When a plaintiff's pleading is deficient, leave to amend generally must be granted unless amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008); Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004); Grayson v. Mayview State Hosp., 293 F.3d 103, 110 (3d Cir. 2002). An amendment is futile when it would not cure the deficiency in the complaint, or, in other words, when the complaint, as amended, would still fail to state a claim upon which relief could be granted. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)).

B. **Supplemental Jurisdiction Standard**

When a federal district court has original jurisdiction over a claim, it also has supplemental jurisdiction over all other related claims that form part of the same case or controversy. 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over such a claim if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). If, however, the court dismisses the claims giving a court original jurisdiction before trial begins, the district court "must decline to decide the pendant

4

state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Bright v. Westmoreland County, 443 F.3d 276, 286 (3d Cir. 2006)(citing Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)); see Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000). A district court's refusal to exercise supplemental jurisdiction over state law claims is reviewed for an abuse of discretion. Maher Terminals, LLC v. Port Auth. of New York & New Jersey, 805 F.3d 98, 104 (3d Cir. 2015).

### III. Analysis

#### A. Federal Wiretap Claim

##### 1. Legal Principles

Section 2511 of the Wiretap Act prohibits individuals from intercepting a communication or procuring another to intercept a communication. 18 U.S.C. § 2511; Bartnicki v. Vopper, 532 U.S. 514, 523 (2001). Any individual whose communication is "intercepted, disclosed, or intentionally used" can bring a civil action for injunctive relief and monetary damages. 18 U.S.C. § 2520; Kwok Sze v. Pui-Ling Pang, 529 F. App'x 196, 199 (3d Cir. 2013). A plaintiff pleads a prima facie case under the Wiretap Act by alleging that the defendant: (1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept (3) the contents of (4) any wire, electronic, or oral communication, (5) using a device. In re Nickelodeon Consumer Privacy Litig., No. 15-1441, slip op. at 25 (3d Cir. Jun. 27, 2016); In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 135 (3d Cir. 2015).

##### 2. Grounds for Dismissal

Defendants move to dismiss Count I of the complaint on the ground that Vasko's federal wiretap claim is barred because Twyford gave Podurgiel permission to listen to his conversation with Vasko. (ECF No. 6 at 5-6.) In other words, Defendants argue that the consent of one party to a conversation is a complete defense under the Wiretap Act.

One-party consent is a viable defense under the Wiretap Act. Sections 2511(2)(c) and (2)(d) of the Wiretap Act state that it shall not be unlawful for a person to intercept a communication "where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. §§ 2511(2)(c) & (d). The Wiretap Act is not violated if the interceptor is a party to the communication or if one of the parties to the communication consents to the interception of the communication by a third party. Nickelodeon, slip op. at 25-26, 27; United States v. Cianfrani, 573 F.2d 835, 855 (3d Cir. 1978); Smith v. Trusted Universal Standards in Elec. Transactions, Inc., No. 09-4567, 2011 WL 900096, at *9 (D.N.J. 2011).

Section § 2511(2)(c) applies to a "person acting under color of law," while § 2511(2)(d) applies to a "person not acting under color of law" with respect to the interception of a communication. For purposes of the Wiretap Act, the phrase "acting under color of law" does not equate to the concept of a "state actor" under federal civil rights statutes. Thomas v. Pearl, 998 F.2d 447, 450-51 (7th Cir. 1993). Instead, the phrase is defined more narrowly, and is used to describe situations in which either the government itself records a conversation, e.g., Thomas v. Seth, 317 F. App'x 279, 281-82 (3d Cir. 2009), or directs an individual, such as a cooperating witness or informant, to do so during a governmental investigation, e.g., United States v. Antoon, 833 F.2d 200, 203 (3d Cir. 1991); United States v. Santillo, 507 F.2d 629, 632 (3d Cir. 1975); In re High Fructose Corn Syrup Antitrust Litig., 216 F.3d 621, 625-26 (7th Cir. 2000). Whereas a "person acting under color of law" is always entitled to invoke one-party consent as a defense, that defense does not apply if a "person not acting under color of law" intercepts a communication "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d).

6

In opposition to Defendants' motion to dismiss based upon one-party consent, Vasko focuses exclusively upon the Pennsylvania wiretapping statute, and repeatedly insists that she is entitled to relief because she had an expectation of privacy when meeting with Twyford and did not give Podurgiel permission to listen to their conversation. (ECF No. 13 at 3-4.) Vasko does not discuss the impact of § 2511 on her federal wiretap claim, or cite to any legal authority to support her argument that she can plead a valid claim under the Wiretap Act in light of Twyford having given Podurgiel permission to listen to their conversation. (Id. at 4.) Vasko, instead, argues that Defendants' position is a "convoluted twisting" of the Pennsylvania wiretap statute. (Id.) Vasko does not recognize that the federal and state wiretapping laws differ with respect to the defense of one-party consent.

As set forth above, the Wiretap Act is not violated when one party to a conversation consents to the interception. 18 U.S.C. §§ 2511(2)(c) & (d). Vasko alleges in her complaint that Twyford gave Podurgiel permission to listen to his conversation with Vasko. (ECF No. 1 ¶¶ 13, 16, 19, 23; ECF No. 2.) Although Vasko claims that there is a "genuine issue of material fact whether it was Twyford or [Podurgiel] who arranged for this interception," ECF No. 13 at 2, Vasko's complaint belies that assertion. The complaint clearly and consistently alleges that Twyford gave Podurgiel permission to listen to the conversation. (Id.) In any event, this allegedly "disputed fact" is immaterial. Under the Wiretap Act, Twyford's consent is determinative; whether Twyford or Podurgiel, or both, activated the intercom function on the telephone, or "arranged" for its use is inapposite. Either factual scenario would fall within the parameters of § 2511(2)(c) & (d). Nickelodeon, slip op. at 25-26, 27; Cianfrani, 573 F.2d at 855.

7

If Defendants acted "under color of law" when Podurgiel listened to Vasko's conversation with Twyford, then Twyford's grant of permission to Podurgiel is determinative; one-party consent is always a defense when the person acts under color of law. If Defendants did "not act[] under color of law" with respect to the events set forth in the complaint, then Twyford's grant of permission to Podurgiel would not provide a defense if the communication was intercepted for the purpose of committing a criminal or tortious act. 18 U.S.C. § 2511(2)(d). Vasko does not invoke the exception set forth in § 2511(2)(d) in her complaint, or allege any facts therein that could warrant its application, and does not oppose Defendants' motion to dismiss on this ground. In any event, for the exception to apply, the criminal or tortious act must be something other than the allegedly unlawful interception itself. Nickelodeon, slip op. at 28-29 (recognizing that the "tortious act" exception only applies "when the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording") (emphasis in original); Google, 806 F.3d at 145 ("the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication [and] involve[e] tortious or criminal use of the interception's fruit"). Vasko's complaint does not include any facts stating a plausible secondary claim that Defendants engaged in "tortious or criminal use" of the conversation. To the contrary, Vasko's complaint asks this court to impose liability upon Defendants for engaging in the act of intercepting her conversation. (ECF No. 1 ¶¶ 13, 17-18, 23-24, 28-29, 33-34, 38, 41.) Therefore, no exception to the one-party consent defense could apply in this case.

Vasko fails to state a plausible claim for relief under the Wiretap Act; to the contrary, she pled facts that preclude the claim, i.e., one party to the conversation – Twyford – consented to the interception. Defendants' motion to dismiss will be granted, with prejudice. The court need not provide Vasko an opportunity to amend because, based upon the allegations made in the complaint, any amendment would be futile. Foman, 371 U.S. at 182. It is factually indisputable that Twyford gave permission to Podurgiel to listen to his conversation with Vasko. (ECF No. 1.) Twyford's consent is a complete defense under the Wiretap Act. 18 U.S.C. §§ 2511(2)(c) & (d). Any amendment that would take Vasko's complaint outside the parameters of § 2511(2), by either claiming that Twyford did not consent or that Defendants used the contents of the conversation to commit a criminal or tortious act, would not only directly contradict the facts pled in the original complaint, but also directly contradict the sworn testimony given by both Twyford and Podurgiel before the Unemployment Compensation Board, transcripts of which Vasko attaches to her complaint as an exhibit and on which Vasko explicitly relies in her complaint. (ECF No. 1 ¶¶ 11-13, 25, 35; ECF No. 2.)

### B. Section 1983 Claim

#### 1. Legal Principles

Section 1983 imposes civil liability upon any person who, while acting under color of state law, deprives another individual of rights, privileges, and immunities secured by the Constitution or federal law. Doe v. Delie, 257 F.3d 309, 314 (3d Cir. 2011). To prevail on a claim brought pursuant to § 1983, a plaintiff must show that (1) the defendant acted under color of state law, and (2) the defendant's actions deprived the plaintiff of rights secured by the Constitution or federal statutes. Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997). The threshold requirement for bringing a § 1983 claim is "that the alleged deprivation was committed by a person acting under color of state law." Mark v. Borough of Hatboro, 51 F.3d 1137, 1141

(3d Cir. 1995). "The 'under color' of state law requirement for § 1983 liability is identical to the 'state action' requirement under the Fourteenth Amendment." Id.

To state an equal protection claim, the plaintiff "must allege that he has been treated differently because of his membership in a suspect class or his exercise of a fundamental right, or that he has been treated differently from similarly-situated others and that this differential treatment was not rationally related to a legitimate state interest." Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005). When the plaintiff does not allege being a member of a suspect class, a plaintiff can establish a class-of-one equal protection claim by alleging that (1) the plaintiff has been intentionally treated differently from others similarly situated, and (2) there is no rational basis for the difference in treatment. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

**2. Grounds for Dismissal**

Defendants argue that Vasko did not plead, and cannot prove, that Twyford or Habitat are state actors. (ECF No. 6 at 7.) Defendants assert that without pleading this critical element, Vasko cannot bring a § 1983 claim. (Id. at 6.) Vasko does not allege in her complaint or argue in opposition to Defendants' motion to dismiss that Habitat or Twyford are governmental or public entities. Instead, Vasko contends in her opposition brief that Habitat and Twyford acted under color of state law because, as a non-profit organization, Habitat is licensed by the state and subject to state regulation. (ECF No. 13 at 6-7.) The conduct of Habitat, a private actor, cannot constitute state action based upon the contentions made by Vasko in her complaint and in opposition to Defendants' motion to dismiss.

Although a private party may cause a deprivation of a constitutional right, it is subjected to liability under § 1983 only when it does so under color of state law. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978). Section 1983 excludes from its reach "merely private conduct," no matter how discriminatory or wrongful. Am. Manufacturers Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999). In general, state action by a private entity may be found only when there is such a "close nexus between the State and challenged action" that private behavior "may be fairly treated as that of the State itself." Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001). The Court of Appeals for the Third Circuit uses three discrete tests derived from various Supreme Court decisions to determine whether a private party's actions constitute state action: (1) state compulsion; (2) joint participation; and (3) exclusive public function. Francis v. Lehigh Univ., No. 10-4300, 2011 WL 204749, at *6 (E.D. Pa. Jan. 24, 2011); Graham v. City of Phila., No. 01-2593, 2002 WL 1608230, at *4 (E.D. Pa. July 17, 2002).

Vasko does not recognize these tests. Her argument appears to rely upon the state compulsion test. It is well established, however, that a private entity does not become a state actor because it holds a license issued by the state, is subject to state regulation, or is granted tax-exempt, or non-profit, status by the state. Blum v. Yaretsky, 457 U.S. 991, 1004, 1011 (1982) ("[the] mere fact that a business is subject to state regulation does not by itself convert its action into that of the State"); Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974); Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982) (finding that state regulation, no matter how extensive, does not make an organization's actions state actions); Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 176 (1972); Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173 (3d Cir. 2000) (regulation and licensing of casino activities did not transform casinos into state actors for purposes of § 1983); Bethel v. Jendoco Constr. Corp., 570 F.2d 1168 (3d Cir. 1978) (the fact that

construction companies were protected and regulated as "legal entities" of the State was insufficient to bring the conduct of these companies within the purview of § 1983, even if these companies received a portion of their income from projects financed, in whole or in part, by state governmental agencies); see White v. St. Joseph's Hosp., 369 F. App'x 225, 226 (2d Cir. 2010) (licensing by the state alone does not render the licensee a state actor); Comiskey v. JFTJ Corp., 989 F.2d 1007 (8th Cir. 1993) (holding that a bar was not a state actor even though the state had issued a liquor license to the bar); Gipson v. Rosenberg, 797 F.2d 224, 225 (5th Cir. 1986), *cert. denied,* 481 U.S. 1007 (1987) (business does not become a state actor because it is granted a license by the state); Wagner v. Metro. Nashville Airport Auth., 772 F.2d 227 (6th Cir. 1985) (an air carrier, which leases airport space from state entity and was required to obtain approval of its security plan from the Federal Aviation Agency, did not act under color of state law); Millenson v. New Hotel Monteleone, Inc., 475 F.2d 736 (5th Cir. 1973) (a hotel restaurant which excluded women was not acting under color of state law, even though the hotel and its restaurant operated under various licenses issued by the state); Mateen v. Am. President Lines, No. 12-6849, 2013 WL 3964808, at *4 (D.N.J. July 31, 2013) (collecting decisions); Schneller v. Crozer Chester Med. Ctr., No. 06-0698, 2009 WL 737337, at *6 (E.D. Pa. Mar. 19, 2009), aff'd sub nom. Schneller ex rel. Schneller v. Crozer Chester Med. Ctr., 387 F. App'x 289 (3d Cir. 2010) (collecting decisions); Afkhami v. Carnival Corp., 305 F. Supp. 2d 1308 (S.D.Fla. 2004) (regulations of cruise shipping industry did not transform a cruise ship company into a state actor even if it used government-owned ports). None of the case law cited by Vasko in her opposition brief, ECF No. 13 at 6-8, contradicts this body of law. The decisions cited by Vasko, instead, actually apply the state compulsion, joint participation, and exclusive public function tests articulated above.

Vasko's argument that Habitat is a state actor because it is a licensed, and purportedly regulated, non-profit corporation is contrary to established law. Vasko asserts no other basis on which this court could find that Defendants acted under color of state law. No amendment could cure this deficiency, and therefore, the § 1983 claim must be dismissed with prejudice.[2]

### C. <u>Supplemental Jurisdiction</u>

Vasko asserts two federal claims in her complaint, and one claim under Pennsylvania statutory law. Both federal claims are dismissed, with prejudice, leaving only a claim under state law remaining. The court is unable to discern any basis upon which this court could exercise subject-matter jurisdiction over that claim. When a state claim is the only remaining claim and trial has not begun, this court is instructed to decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); <u>Hedges</u>, 204 F.3d at 123. Judicial economy, convenience, and fairness do not justify this court exercising jurisdiction over Vasko's Pennsylvania wiretap claim. <u>Bright</u>, 443 F.3d at 286; <u>Lancaster</u>, 45 F.3d at 788; <u>Hedges</u>, 204 F.3d at 123. This case is in its infancy, with only initial pleadings filed. No discovery has taken place in this court, and no trial date is scheduled. For these reasons, Vasko's claim under the Pennsylvania wiretap statute is dismissed, without prejudice to her right to refile it in state court.

---

[2] Vasko did not adequately plead the elements of an equal protection claim. The court need not address this pleading deficiency because failure to adequately plead that Defendants acted under color of state law requires dismissal of the § 1983 claim.

## IV. Conclusion

Counts I and III of the complaint are dismissed with prejudice. The court need not provide Vasko an opportunity to amend because the deficiencies in these claims are not correctable. Count II is dismissed without prejudice to Vasko's ability to refile her state wiretap claim in state court.

An appropriate order will be entered contemporaneously with this opinion.

Dated: June 28, 2016

BY THE COURT:

*/s/ Joy Flowers Conti*
Joy Flowers Conti
Chief U.S. District Judge